IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NATHAN MATTHEW KINARD,
     Plaintiff,

vs.                        Case No.: 3:19cv1619/RV/EMT

SERGEANT MICHAEL HOFFMAN, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Nathan Matthew Kinard ("Kinard") is an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis in this civil rights case. Presently before the court is Kinard's Amended Complaint (ECF No. 8). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of Kinard's Amended Complaint, the undersigned concludes he has failed to state a claim upon which relief may be granted. Therefore, this action should be dismissed.

I.     BACKGROUND

Kinard commenced this case by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). The court reviewed the Complaint to determine whether this action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A. Upon review of the Complaint, it appeared that Kinard's claims are barred by the statute of limitations. Therefore, the court advised Kinard of the legal standards applicable to the limitations issue, including the equitable tolling standard (*see* ECF No. 5). The court noted that Kinard stated in his Complaint, "There are reasons for not filing earlier"; so the court provided Kinard an opportunity to file an amended complaint, and instructed him to include these "reasons" in his amended complaint (*see id.* at 5).

Kinard has now filed the instant Amended Complaint (ECF No. 8). He names the following Defendants: (1) Michael Hoffman, a sergeant at the Escambia County Jail ("Jail"); (2) David Dunkerly, a public defender; (3) an unidentified State Prosecutor; (4) Scott Pagan, a "VA representative" in Pensacola, Florida; (5) the Warden of the Jail; (6) an unidentified Nurse at the Jail; (7) an unidentified Mental Health Counselor at the Jail; (8)–(9) two unidentified "Arresting Police (interrogators)"; and (10)–(20) eleven unidentified Officers with the Escambia County Sheriff's Department (Amended Complaint at 1–2).[1]

Kinard asserts a Sixth Amendment claim of ineffective assistance of counsel against Public Defender Dunkerly (Amended Complaint (ECF No. 8) at 17). Kinard

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the pagination of the original document.

asserts Sixth and Eighth Amendment claims of cruel and unusual punishment against the unidentified Officers (*id.*).  Kinard asserts Sixth and Fourteenth Amendment claims of deliberate indifference against Sergeant Hoffman, the Warden, the State Prosecutor, the unidentified "Arresting Police (interrogators)," and the unidentified Officers (*id.*).  Kinard asserts Fourteenth Amendment claims against the Nurse and the Mental Health Counselor (*id.*).  Kinard states Escambia County "should also be held liable" for failing to protect him while he was in Jail (*id.*).

Kinard alleges he has suffered physically, mentally, and emotionally from Defendants' conduct (Amended Complaint at 17).  He seeks punitive and compensatory damages for "lost wages, a lost occupational license, the loss of his home, land, property, family, friends, pets, and health problems and deterioration resulting from the past five years he has spent incarcerated" (*id.*).

## II.    STATUTORY SCREENING STANDARD

Because Kinard is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines that Kinard's allegations fail to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).  The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed

in the light most favorable to Kinard.  *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).    To survive statutory screening under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation marks and citation omitted).

The court must consider the operative pleading (in this case, the Amended Complaint) in its entirety.  The court will also consider other sources which courts ordinarily examine when ruling on a 12(b)(6) motion, in particular, documents attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

III.   KINARD'S FACTUAL ALLEGATIONS

Kinard's Amended Complaint concerns events that occurred from August 17, 2014 through April of 2015, while he was an inmate of the Jail (Amended Complaint at 5–16).  Kinard alleges his then-girlfriend, Sarah Pagan, accused him of sexual assault and battery (*id.* at 5).  Kinard alleges he was arrested on August 17, 2014,

and charged with two counts of sexual battery and one count of assault (*id.* at 5–6).[2] Kinard alleges Defendant Scott Pagan, who was embroiled in a "bitter divorce" with Sarah Pagan, conspired with Defendant "State Prosecutor" and Defendant Officers at the Jail to "fix Nathan so that he don't [sic] come out of prison for a very long time" (*id.*).

Kinard alleges the court appointed Defendant Dunkerly to represent him in the criminal case (Amended Complaint at 7, 13).  Kinard alleges Defendant State Prosecutor instructed Dunkerly "he must get Nathan Kinard to plea [sic] guilty to all charges, and no if and but [sic]" (*id.* at 7, 14).  Kinard alleges he met with Dunkerly, and gave Dunkerly letters from the victim which exonerated him of the charges (*id.* at 13).  Kinard alleges Dunkerly failed to depose the victim or conduct pre-trial investigation, and simply urged him to accept a plea agreement (*id.* at 13–14).  Kinard alleges he told Dunkerly about assaults by Defendant Hoffman, but Dunkerly stated he had already worked out a deal with the prosecutor (*id.* at 14).

---

[2] According to the record of Kinard's federal habeas case, filed in this court in 2018, Case No. 3:18cv111/MCR/HTC, Kinard was arrested on August 17, 2014, and charged in the Escambia County Circuit Court, Case No. 2014-CF-3493, with two counts of sexual battery upon a person less than 12 years of age by a person 18 years of age or older, in violation of Florida Statutes § 794.011(2)(a).  *See Kinard v. Inch*, No. 3:18cv111/MCR/HTC, Respondent's Motion to Dismiss, ECF No. 25 (N.D. Fla. Feb. 21, 2019).  On April 7, 2015, the trial court adjudicated Kinard guilty, pursuant to his guilty plea, and sentenced him to concurrent terms of twenty-five (25) years in prison to be followed by a life term of Sex Offender Probation.  *See id.*

Kinard alleges the two Defendant "Arresting Police (interrogators)" refused to accept the victim's recantation, and took a DNA swab from him without a warrant (Amended Complaint at 13).

Kinard also alleges Defendant State Prosecutor instructed Defendant Hoffman, a sergeant at the Jail, to "soft [sic] Nathan Kinard up" so he would plead guilty (Amended Complaint at 6, 14). Kinard alleges Defendant Hoffman elicited the help of Defendant Officers, and even another Jail inmate, to physically abuse and mentally abuse and torture him (*id.* at 6–7). Kinard alleges Hoffman physically assaulted him on more than five occasions from August 17, 2014 to April of 2015, and then threatened, "if you tell anyone on me, I will have another officer beat you, when you get to the prison you are going to" (*id.* at 6–7, 9).

Kinard states he told Defendant Mental Health Counselor about the physical abuse by Sergeant Hoffman and the other inmate, but nothing was done, and the Counselor soon stopped coming to see him (Amended Complaint at 7, 14).

Continuing, Kinard alleges Defendant Officers threw wads of paper into his cell, and he reacted by engaging in "erratic behavior," kicking at the bars of his cell (Amended Complaint at 8). Kinard alleges Defendant Officers moved him into a restraint chair for the day, which he describes as a "hot seat" and "torture cage" (*id.* at 8, 15–16). He alleges he was then taken to a "suicide cell," where he remained for months (*id.* at 8). Kinard alleges he attempted to escape by "climbing into the

attic," but was caught by officers (*id.*).[3]  Kinard alleges he suffered cuts from sharp objects on the attic floor (*id.*).  Kinard alleges he was taken to the medical department, where Defendant Nurse cleaned and bandaged his wounds, but failed to provide stitches or hospitalization (*id.* at 8, 14).  Kinard alleges Defendants Officers sprayed him with mace (*id.* at 9).  He alleges he was taken to the medical department, where Defendant Nurse treated him (*id.*).  Kinard alleges Defendant Hoffman ordered that the water in his cell be turned off, so he had "a mental breakdown," "became irrational," and drank contaminated water from the toilet (*id.* at 10–11).  Kinard alleges, "in his state of brokeness [sic]," he pleaded guilty to crimes he never committed (*id.* at 11).

Kinard alleges he filed a grievance complaining about the assaults, and hand-delivered the grievance to Defendant Warden (Amended Complaint at 9–10, 14).  Kinard alleges the Warden told him that his grievance was being investigated, but Kinard never heard the results of the investigation (*id.* at 10, 14).  Kinard alleges the Nurse and Mental Health Counselor also knew he was being abused, but failed to

---

[3] According to the record of Kinard's federal habeas case, Kinard was charged with escape in Escambia County Case No. 2015-CF-42, on January 5, 2015.  *See Kinard v. Inch*, No. 3:18cv111/MCR/HTC, Respondent's Motion to Dismiss, ECF No. 25 (N.D. Fla. Feb. 21, 2019).  On April 7, 2015, the trial court adjudicated Kinard guilty, pursuant to his guilty plea, and sentenced him to ten (10) years in prison, to run concurrently with the sentence in Case No. 2014-CF-3493.  *See id.*  Kinard was again charged with escape, as well as criminal mischief for damaging a toilet and a window at the Jail, in Escambia County Case No. 2015-CF-711, on February 17, 2015.  *See id.*  On April 7, 2015, the trial court adjudicated Kinard guilty, pursuant to his guilty plea, and sentenced him to concurrent terms of ten (10) years in prison, to run concurrently with the sentence in Case No. 2015-CF-42.  *See id.*

report it to the federal government (*id.* at 15).  Kinard alleges he hand-delivered a complaint to the state court judge presiding over his criminal case, and the judge read his complaint into the record of the proceedings that day (*id.* at 16).

Kinard then describes events that occurred approximately one month after he left the Jail and entered FDOC custody (Amended Complaint at 8, 11–12, 13).[4]  He alleges he "broke out with sores," and the prison doctor gave him an antibiotic, but the infection kept returning (*id.* at 11).  Kinard alleges officers at Okeechobee Correctional Institution arranged for four inmates to beat him (*id.*).  He alleges two officers at Charlotte Correctional Institution allowed an inmate to beat him (*id.* at 11, 13).  And he alleges two officers at Dade Correctional Institution, where he has been housed since he commenced this case, beat him (*id.* at 11–12).

IV.    DISCUSSION

A.    Defendant Dunkerly

Kinard cannot state a claim for relief against Defendant David Dunkerly.  In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1.   whether the conduct complained of was committed by a person acting under color of state law; and

> 2.   whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

---

[4] According to an offender information search of the official website of the FDOC, Kinard was received into FDOC custody on April 13, 2015.  *See* www.dc.state.fl.us.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Duke v. Cleland*, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing *Parratt*).

Kinard alleges Defendant Dunkerly was the public defender who represented him in the state criminal case which resulted in the judgment and prison sentence he has been serving in the FDOC since April of 2015. But attorneys employed as public defenders do not act under color of state law when they represent clients. *Polk Cnty. v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 450, 70 L. Ed. 2d 509 (1981); *Christian v. Crawford*, 907 F.2d 808, 810 (11th Cir. 1990). Therefore, Kinard cannot state a plausible § 1983 claim against Defendant Dunkerly.

B.    Remaining Defendants

Kinard's claims against the remaining Defendants are barred by the statute of limitations. Section 1983 does not contain a specific statute of limitations; therefore, Section 1988 directs the district courts to select and apply the most appropriate or analogous state statute of limitations. *See* 42 U.S.C. § 1988(a). Florida's four-year statute of limitations applies to Kinard's § 1983 claims. *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citation omitted).

Although the court applies Florida law in this regard, federal law determines the date on which the limitations period begins to run. *See Brown v. Ga Bd. of*

*Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003).  The Eleventh Circuit has held that the statute of limitations begins to run from the date "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  *Id.* (citation omitted).

Florida law authorizes the tolling of statutory limitations period in certain specified circumstances, none of which are involved in this case.  *See* Fla. Stat. § 95.051.

Under the federal doctrine of equitable tolling, the party seeking to toll the limitations period must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc).  To satisfy the diligence requirement, a plaintiff must show only "reasonable diligence," not "maximum feasible diligence."  *Holland v. Florida*, 560 U.S. 631, 653, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).  The Supreme Court has stressed that equitable tolling "is an extraordinary remedy which should be extended only sparingly."  *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citation omitted).  Generally speaking, equitable tolling is reserved for cases involving some affirmative misconduct or deception on the part of the adverse party. *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005); *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)

(equitable tolling may be appropriate in cases "where the claimant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass").

Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the subject case. *See Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012); *see Holland*, 560 U.S. at 649–50 (clarifying "the exercise of a court's equity powers must be made on a case-by-case basis") (internal quotation marks and ellipsis omitted). The plaintiff has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory. *Hutchinson*, 677 F.3d at 1099. Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with the limitations period. *See Cole v. Warden,* 768 F.3d 1150, 1158 (11th Cir. 2014) (internal quotation marks and citation omitted). Further, under the "extraordinary circumstance" prong, the Eleventh Circuit requires a litigant to show a causal connection between the alleged extraordinary circumstances and the late filing of the federal lawsuit. *See San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (citations omitted).

Here, the facts which would support a cause of action were apparent, or should have been apparent to a person with a reasonably prudent regard for his rights, on or

before April 13, 2015, the date Kinard left the Jail and entered FDOC custody. Kinard was thus required to file this federal lawsuit by April 13, 2019. Kinard commenced this lawsuit on May 30, 2019, the date he placed his initial Complaint in the hands of prison officials for mailing to the court (*see* Complaint at 1). He thus filed this lawsuit over a month too late.

As previously discussed, in Kinard's initial Complaint, he stated, "There are reasons for not filing earlier" (Complaint at 6). The court then advised Kinard of the legal standards applicable to the limitations issue, including the equitable tolling standard, provided Kinard an opportunity to file an amended complaint, and instructed him to include these "reasons" in his amended complaint (*see* ECF No. 5). In his Amended Complaint, Kinard now states he was incapable of filing earlier, because he "lost most of his remembrance" due to the "mental torture" of Sergeant Hoffman and the other Officers (Amended Complaint at 12). Kinard states his memory "is slowly come back [sic]" (*id.*).

Mental impairment is not per se a reason to toll the statute of limitations. *See Hunter v. Ferrell*, 587 F.3d 1304, 1309-10 (11th Cir. 2009). Rather, the alleged mental impairment must have affected Kinard's ability to timely file his complaint. *See id.*; *see also Lawrence v. Florida*, 421 F.3d 1221, 1226–27 (11th Cir. 2005) (petitioner's contentions that his IQ was 81 and he had "suffered from mental impairments his entire life," without more, were insufficient to justify equitable

tolling because they did not establish a causal connection between the petitioner's alleged mental incapacity and his ability to file a timely initial pleading). Here, Kinard's bald assertion of memory loss is insufficient to plausibly suggest it was an obstacle so severe that it rendered him unable to file the complaint in this case sooner.[5]

Kinard also argues the filing deadline should be extended because the alleged abuse continued after he left the Jail and entered the FDOC (Amended Complaint at 8, 11–13). As previously discussed, he alleges facts concerning incidents of excessive force and attacks by other inmates which occurred at FDOC institutions after he left the Jail (*see id.* at 11–14). But the fact that Kinard pursued other federal litigation during the time of this alleged abuse (i.e., his federal habeas action) refutes his claim that these events prevented him from filing this civil rights action.

And to the extent Kinard seeks to add timely claims of constitutional violations that allegedly occurred at FDOC institutions in an effort to save his time-barred claims concerning events at the Jail,[6] his effort is unavailing. Kinard names

---

[5] Indeed, the court notes that in Kinard's federal habeas case, the district judge rejected Kinard's argument that his mental instability and the abuse he suffered by Sergeant Hoffman prevented him from filing his habeas petition by the federal filing deadline of May 9, 2016. *See Kinard v. Inch*, No. 3:18cv111/MCR/HTC, Petitioner's Objection to Report and Recommendation, ECF No. 30 (N.D. Fla. Apr. 15, 2019), Petitioner's Memorandum in Support of Objection, ECF No. 31 (N.D. Fla. May 31, 2019); Order Adopting Report and Recommendation, ECF No. 33 (N.D. Fla. July 11, 2019).

[6] In Kinard's initial Complaint, he did not include any allegations of abuse at FDOC institutions (*see* Complaint).

as Defendants only persons who worked at the Jail (Amended Complaint at 1–2). Further, Kinard's factual allegations do not plausibly suggest that the incidents at the Jail and the incidents at any of the FDOC institutions arise out of the same occurrence or series of occurrences. Therefore, any FDOC officers would not be properly joined as Defendants. *See* Fed. R. Civ. P. 20(a)(2) (persons may be joined in one action as defendants if any right to relief is asserted against them with respect to or arising out of the same occurrence or series of occurrences; and any question of law or fact common to all defendants will arise in the action).

Moreover, venue for Kinard's claims against officers at FDOC institutions would not be proper in the Northern District of Florida, because the acts or occurrences forming the basis of those claims occurred in the Middle District of Florida (for events that occurred at Charlotte C.I.) and the Southern District of Florida (for events that occurred at Okeechobee C.I. and Dade C.I.). Therefore, if Kinard wishes bring claims against any FDOC officer concerning events that occurred at an FDOC institution, he should assert them in a separate § 1983 action filed in the appropriate venue.

V.    CONCLUSION

Kinard cannot bring a § 1983 claim against Defendant Dunkerly, and his claims against the remaining Defendants are barred by the statute of limitations.

Therefore, this case should be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Accordingly, it is respectfully **RECOMMENDED**:

1.      That this action be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

2.      That all pending motions be **DENIED as moot**.

At Pensacola, Florida this 26th day of July 2019.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**